# IN THE COURT OF APPEALS OF IOWA

No. 17-1199
Filed July 18, 2018

**ROB M. GALEY,**
    Plaintiff-Appellant,

**vs.**

**EMPLOYMENT APPEAL BOARD and WAPELLO RURAL WATER ASSOCIATION, INC.,**
    Defendants-Appellees.
_____

Appeal from the Iowa District Court for Polk County, Robert B. Hanson, Judge (remand), and Eliza J. Ovrom, Judge (ruling).

A fired worker appeals the judicial review order upholding a denial of unemployment benefits. **AFFIRMED.**

Billy J. Mallory of Brick Gentry, P.C., West Des Moines, for appellant.

Rick Autry, of Employment Appeal Board, Des Moines, for appellees.

Considered by Vaitheswaran, P.J., and Potterfield and Tabor, JJ.

**TABOR, Judge.**

A fired worker challenges the denial of unemployment benefits based on the revocation of his driving privileges following an arrest for operating while intoxicated (OWI). The worker, Rob Galey, contends "an isolated OWI first offense and anticipated loss of a driver's license" should not be viewed as disqualifying job-related misconduct under Iowa Code section 96.5(2) (2015). Because the bulk of Galey's job as a service technician for the Wapello Rural Water Association required driving a truck from location to location to meet customer needs, the Employment Appeal Board (EAB) identified his failure to maintain a driver's license as misconduct connected to his work. On judicial review, the district court upheld the agency decision.

In this appeal, Galey raises two issues. First, Galey contends the district court abused its discretion in remanding for additional evidence to be submitted to the agency. Second, he maintains the record does not support the determination he was fired for job-related misconduct and the EAB decision is irrational, illogical, or wholly unjustifiable. Because Galey's subsequent guilty plea and sentence was relevant to the question of misconduct, we find no abuse of discretion in the remand. And because, like the district court, we find substantial evidence supporting the agency's identification of misconduct, and the decision was not irrational, illogical, or wholly unjustifiable, we affirm.

## I. Facts and Prior Proceedings

Galey worked as a full-time service technician for the rural water association from 2005 until 2016. As a service technician, he was continually called to drive

around the multi-county territory served by the association. A valid driver's license was essential to completing his job duties.

On February 7, 2016, police arrested Galey for first-offense OWI while he was driving his personal vehicle. Galey notified his supervisor and the association's general manager about the arrest and the possibility Galey would lose his driver's license. On February 10, the association's governing board met and discussed Galey's situation. The board decided if Galey lost his license the association would need to end his employment immediately. The board informed Galey of its decision on February 11. Galey then informed his supervisors on February 15 that he was required to surrender his driver's license that same day. The association followed through with the board's decision and terminated Galey's employment February 15, 2016.

Galey filed a claim for unemployment benefits but the claim was denied because the Iowa Workforce Development, Claims Section, determined Galey was discharged for misconduct. Galey appealed, and an administrative law judge (ALJ) upheld the denial of benefits. The ALJ found (1) Galey was terminated because he no longer held a valid driver's license; (2) Galey was aware his job required him to have a valid license and he would not be able to complete his duties without one; and (3) Galey's failure to maintain his driver's license, as a known condition of his employment, constituted misconduct sufficient to deny unemployment benefits. Galey appealed to the EAB, contending an arrest for OWI first offense and anticipated loss of a driver's license did not constitute misconduct. Galey also claimed the evidence was insufficient to find misconduct because at the time he was discharged he had not yet lost his license—contrary to what he had informed

his employer. The EAB unanimously affirmed the ALJ's decision and adopted the findings of fact and conclusions of law as its own. Galey then sought judicial review.

In the district court, Galey contended the EAB's ruling was not supported by substantial evidence in the record made before the agency and was irrational, illogical, or wholly unjustifiable. Part of Galey's contention stemmed from apparent miscommunication as to when his license revocation began. Despite telling his employer he could not legally drive as of February 15, Galey later claimed he was not required to surrender his license until February 17. So Galey reasoned the association's decision to terminate his employment could not have been based on his lack of a driver's license.

Galey also argued no evidence showed he intentionally or deliberately did any of the following: (1) set out to lose his driver's license; (2) acted in a manner that would prevent him from carrying out his job duties; (3) materially breached the duties of his employment; (4) acted in willful or wanton disregard of the employer's interest or in deliberate violation or disregard of standards of behavior which the employer has the right to expect of employees; or (5) repeatedly acted in a manner inconsistent with the employer's interests or his job duties. *See generally* Iowa Admin. Code r. 871–24.32(1)(a) (defining misconduct within meaning of Iowa Code section 96.5(2)).

Lastly, Galey noted the EAB had commented in its written decision, "[U]nderstanding that DOT regulations for license revocation occurs only when a driver tests positive on a test administered for drunk driving, we find that the Claimant's positive test result is sufficient for the Board to find that job-related

misconduct was established." Galey asserted nothing in the record supported the suggestion he had failed a chemical test administered for OWI and he claimed the EAB misstated the conditions for revocation of a driver's license.

After Galey raised the evidentiary issues related to his OWI, the employer and the EAB filed a joint motion under Iowa Code section 17A.19(7) to remand for the parties to submit additional evidence before the agency. The employer wanted the agency to consider three documents from Galey's OWI case: the trial information, his written guilty plea, and the judgment order. Galey resisted the motion, but the district court concluded the three documents were material, addressed an issue Galey continued to contest, and good cause existed for the employer's failure to present the documents in the contested case proceeding. The district court remanded the matter to the EAB.

The EAB then reviewed the entire record including the three new documents and affirmed its prior decision with two modifications: (1) it added to the findings of fact, "On February 7, 2016, the Claimant drove a motor vehicle in violation of 321J.2(1)(a). It was this act by the Claimant that caused him to lose his driver's license pursuant to Iowa Code § 321J.12, which in turn meant that he could no longer perform his job for the Employer." And (2) it added to the conclusions of law,

> Since the Claimant's intentional criminal act led to his loss of his license, and since he knew his license was an essential job requirement, he committed job-related misconduct when he drove drunk and as a result lost his driver's license. *See Cook v. IDJS*, 299 N.W.2d 698, 702 (Iowa 1980) ('While he received most of his driving citations during non-work hours and in his personal car, they all bore directly on his ability to work for Hawkeye.').

Upon return to the district court, Galey maintained his prior contentions and also asserted the new documents did not establish he committed an intentional or deliberate act constituting misconduct. Galey insisted the plea, judgment, and sentencing occurred after he was fired and therefore could not be the reason for his discharge.

The district court concluded Galey's loss of his driver's license, whether it resulted from conduct on or off duty, was connected to his employment. In the court's view, because Galey was aware he needed a valid driver's license to perform his job duties, his decision to operate a motor vehicle while intoxicated resulting in the loss of his license showed a willful and wanton disregard of his duties and obligations to his employer. The district court concluded the EAB's decision was supported by substantial evidence and that the determination Galey losing his license constituted misconduct was not irrational, illogical, or wholly unjustifiable. The court affirmed the EAB. Galey now contests the judicial review decision.

## II.    *Scope and Standards of Review*

Our review of unemployment benefit cases is governed by the Administrative Procedure Act, Iowa Code chapter 17A. *Harrison v. Emp't Appeal Bd.*, 659 N.W.2d 581, 586 (Iowa 2003). In appeals from judicial review of agency action, our review is limited to correction of errors at law. *Gaffney v. Dep't of Emp't Servs.*, 540 N.W.2d 430, 433 (Iowa 1995). We review the district court's decision by applying the standards of section 17A.19 to agency action to determine if our conclusions are the same as those reached by the court. *Univ. of Iowa Hosps. & Clinics v. Waters*, 674 N.W.2d 92, 95 (Iowa 2004).

We review the district court's decision to remand to the agency to take and consider new evidence for an abuse of discretion. *Zenor v. Iowa Dep't of Transp.*, 558 N.W.2d 427, 431 (Iowa Ct. App. 1996). To show an abuse of discretion, Galey must show the court exercised its discretion "on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *See id.* (citation omitted).

The EAB is authorized by the legislature to determine if a claimant "has been discharged for misconduct in connection with the individual's employment." Iowa Code § 96.5(2). The agency's findings of fact are binding on appeal if they are supported by substantial evidence when the record is reviewed as a whole. *Sharp v. Emp't Appeal Bd.*, 479 N.W.2d 280, 282 (Iowa 1991). Substantial evidence is "the quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance." Iowa Code § 17A.19(10)(f)(1). Our task is not to determine whether the evidence supports a different finding but to determine whether substantial evidence supports the findings actually made. *Cedar Rapids Cmty. Sch. Dist. v. Pease*, 807 N.W.2d 839, 845 (Iowa 2011). We do not afford deference to an agency's legal interpretations unless the legislature vested interpretive authority in the agency. *Renda v. Iowa Civil Rights Comm'n*, 784 N.W.2d 8, 11 (Iowa 2010). Here, we do not defer to the EAB's legal interpretation regarding what constitutes misconduct in connection with employment. *See Irving v. Emp't Appeal Bd.*, 883 N.W.2d 179, 185 (Iowa 2016).

### III.    Analysis

### A.    Did the district court abuse its discretion when it remanded to the agency for the taking of additional evidence?

"In judicial review of a contested case proceeding the district court is limited to the record made before the agency." *Mary v. Iowa Dep't of Transp.*, 382 N.W.2d 128, 131 (Iowa 1986). But the court may order "additional evidence be taken before the agency" if the court believes the evidence is material and good reasons appear for the failure to present it in the contested case proceeding. Iowa Code § 17A.19(7). The agency may modify its findings and decision in the case based on the additional evidence. *Id.*

Galey contends the district court abused its discretion in remanding for the agency to consider additional evidence—his guilty plea and sentence—which he argues could not have been material to the employer's reason for firing him because those events did not occur until months later.[1] The EAB defends the remand, urging the additional evidence was material because Galey attacked the agency's finding that the DOT would revoke his driver's license.[2]

---

[1] Galey relies on *Lee v. Employment Appeal Board.*, 616 N.W.2d 661, 669 (Iowa 2000) for the proposition that the EAB cannot deny benefits based on an employee's conduct—in Lee's case refusal to accept a two-week suspension—which occurs after the events giving rise to the employer's decision to fire. Galey's subsequent act of pleading guilty was not new conduct considered by the agency; rather, the plea and sentence verified the reasons already cited by the employer.

[2] Galey questions the accuracy of the EAB's analysis concerning the DOT regulations for license revocations and chemical testing. The agency record, even after the additional evidence, does not reveal whether Galey tested over the legal limit or refused a chemical test. But in either instance, he would face a license revocation by the DOT—*see* Iowa Code §§ 321J.9, 321J.12—as he informed his employer.

Evidence fits the definition of "material" if it is "reasonably capable" of influencing an agency's decision. *Interstate Power Co. v. Iowa State Commerce Comm'n*, 463 N.W.2d 699, 702 (Iowa 1990). Here, Galey's admission to the conduct that lead to his loss of driving privileges could reasonably bolster the EAB decision to deny benefits; in fact, the agency's modifications to its decision following the remand bear this out. *See id.* at 703. The district court did not abuse its discretion.

**B.     Does substantial evidence support the EAB determination the employee committed misconduct?**

Iowa law disqualifies employees from receiving unemployment compensation if they are discharged for misconduct. *See* Iowa Code § 96.5(2); *Freeland v. Emp't Appeal Bd.,* 492 N.W .2d 193, 196 (Iowa 1992). The statute does not define "misconduct," but agency rules describe it as a "deliberate act or omission by a worker which constitutes a material breach of duties and obligations arising out of such worker's contract of employment." Iowa Admin. Code r. 871–24.32(96)(1); *Freeland*, 492 N.W.2d at 196. Our supreme court has held the agency rule definition to be an accurate reflection of legislative intent. *Freeland*, 492 N.W.2d at 196 (citing *Kleidosty v. Emp't Appeal Bd.*, 482 N.W.2d 416, 416–17 (Iowa 1992)).

Misconduct leaving a worker ineligible for unemployment benefits is not the same as misconduct for purposes of termination by an employer. *See Lee*, 616 N.W.2d at 665 ("Misconduct serious enough to warrant the discharge of an employee is not necessarily serious enough to warrant a denial of benefits." (quoting *Reigelsberger v. Emp't Appeal Bd.*, 500 N.W.2d 64, 66 (Iowa 1993))).

The denial-of-benefits question is whether the employee engaged in a "deliberate act or omission," conduct "evincing such willful or wanton disregard of an employer's interest as is found in deliberate violation or disregard of standards of behavior which the employer has the right to expect of employees," or conduct with "carelessness or negligence of such degree of recurrence as to manifest equal culpability." *See* Iowa Admin. Code. r. 871–24.32(1)(a).

In this appeal, Galey reprises his two-pronged protest of the EAB decision. Galey's first objection involves timing. In his estimation, his employer could not have based his February 15 discharge on the loss of his driver's license because that did not technically occur until two days later. Gailey's second point is that loss of his license was not job-related misconduct.

The district court rejected Galey's first contention in a footnote: "The record clearly demonstrates Petitioner informed Wapello he no longer had a valid driver's license on February 15, 2016, the date he was discharged from employment." Like the district court, we are unconcerned with the exact timing of Galey's license revocation. Substantial evidence supports the agency's finding that Galey's inability to legally drive after his OWI arrest was the motivation for ending his employment.

We turn to Galey's second contention. Galey maintains because he was not working or on call at the time of his arrest, and he was driving his personal vehicle, the incident was not connected with his employment and cannot disqualify him from unemployment benefits. Galey also insists he did not intentionally lose his license or otherwise act in a way that would fit the regulatory definition of misconduct. EAB counters that Galey's deliberate act of driving while intoxicated

impaired his ability to function on the job and thus constitutes employment-connected misconduct.

Cook v. Iowa Department of Job Services, 299 N.W.2d 698 (Iowa 1980) is instructive here. Cook worked as a delivery driver and notified his employer he had numerous speeding citations, mostly for offenses during non-work hours. Id. at 699. The employer's insurance carrier could not insure Cook due to his driving record, and the employer had no position available for Cook that did not require driving. Id. at 700. In denying benefits, the agency concluded Cook voluntarily quit his job, but the district court concluded he was discharged for misconduct, which it described as "self-inflicted uninsurability." Id. at 702. Although Cook did not set out to become uninsurable, he persisted in violating traffic laws knowing his citations affected his ability to work for his employer. See id. (affirming district court's rationale that Cook engaged in misconduct even though his violations occurred during non-work hours and in his personal car). We see significant parallels between Cook and Galey.

The disqualification statute does not mandate misconduct be committed on the employer's time or property—the misconduct need only be "in connection with the individual's employment." See Iowa Code § 96.5(2). When it is not possible to complete one's job duties without a driver's license, as is the case here, the loss of an employee's license due to a deliberate act, such as OWI, can be job-related misconduct. This is true regardless of whether the employee was off duty or in a personal vehicle at the time of the deliberate act. See Kleidosty, 482 N.W.2d at 418–19 (observing "[d]enial of unemployment compensation benefits for conduct off the premises comports with cases decided by other jurisdictions."); Pongdara

*v. Emp't Appeal Bd.*, No. 08-0789, 2008 WL 4725334 at *5 (Iowa Ct. App. Oct. 29, 2008) ("We find the location [of the misconduct] irrelevant to the issue. To be disqualifying, misconduct need only be 'in connection with the individual's employment.'").

Like Cook, Galey's inability to carry out his key job duty—driving—was self-inflicted. *See Cook*, 299 N.W.2d at 702. Galey drove while intoxicated, knowing a valid driver's license was a requirement of his continued employment. The district court concluded Galey's conduct evinced willful and wanton disregard of his duties and obligations to his employer. We agree.

Substantial evidence supports the EAB's finding Galey was discharged for misconduct. Under the circumstances of this case, it was not irrational, illogical or wholly unjustifiable for the EAB to decide Galey's loss of his driving privileges due to an OWI charge was employment-connected. We affirm the district court.

**AFFIRMED.**